IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Action No. 05-cv-00757-LTB-CBS

MICHELE HAMILTON and
LARRY HALL,

    Plaintiffs

v.

MATRIX LOGISTICS, INC.,
TIBBETT & BRITTEN GROUP NORTH AMERICA, INC.,
ROBERT DODSON, and
FRANK AYALA,

    Defendants.
_____

ORDER GRANTING SUMMARY JUDGMENT MOTION IN PART AND
HOLDING IT IN ABEYANCE IN PART, STAY OF CASE, AND
NOTICE TO BANKRUPTCY TRUSTEE
_____

    This case is before me on Defendants' Motion for Summary Judgment. After consideration of the motion and all related pleadings, as well as the oral argument held on January 11, 2007, I grant the motion as it relates to the claims of Plaintiff Larry Hall ("Hall"), but conclude that I am presently unable to rule on Defendants' motion as it relates to the claims of Plaintiff Michele Hamilton ("Hamilton") pending resolution of certain matters in bankruptcy court.

**I. Background**

    Plaintiffs, a married couple, are former employees of Defendant Matrix Logistics, Inc. ("Matrix"). Hamilton alleges that she was sexually harassed by Defendants Robert Dodson ("Dodson") and Frank Ayala ("Ayala") throughout her employment with Matrix. Hall alleges that

his employment with Matrix was terminated in retaliation for his assistance with Hamilton's pursuit of a sexual harassment claim with the Equal Employment Opportunity Commission (the "EEOC").

Based on these principal allegations, Hamilton has asserted claims against Defendants for (1) hostile work environment; (2) retaliation; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) civil conspiracy; (6) invasion of privacy; and (7) negligent retention/supervision, and Hall has asserted claims against Defendants for (1) retaliation and (2) intentional infliction of emotional distress. Hamilton has now agreed to the dismissal of her claims for retaliation and for invasion of privacy. By the motion, Defendants seek judgment as a matter of law on all of Plaintiffs' remaining claims. For purposes of the motion, Defendants concede that Defendants Matrix and Tibbett & Britten Group North America, Inc. ("TB"), Matrix's parent company, are subject to joint and several liability on Plaintiffs' claims.

## II.  Facts

### A.  Matrix's Employment Policies

At all times relevant to Plaintiffs' claims, Matrix maintained a policy prohibiting sexual harassment. This policy defines sexual harassment and provides examples of prohibited conduct. Matrix's sexual harassment policy further instructs employees that all incidents of sexual harassment should be reported to the employee's supervisor and to the human resources department and provides that all claims of harassment will be investigated promptly.

At all times relevant to Plaintiffs' claims, Matrix also maintained a disciplinary policy that designated three categories of disciplinary violations: A, B, and C rules. Category C rules included "[i]mmoral or indecent conduct including violation of EEOC policy" and "[f]alsifying

records or intentionally giving false information." Matrix's disciplinary process for violation of a category C rule was discharge without prior warning. Both Hamilton and Hall were familiar with Matrix's sexual harassment and disciplinary policies.

## B. Facts Relating to Plaintiff Hamilton's Claims Against Defendants

### 1. Plaintiff Hamilton's Employment History

Hamilton's employment with Matrix began in 1998 and continued until July of 2003. During her employment with Matrix, Hamilton held a number of positions. Her last position with Matrix was supervisor. In this position, Hamilton reported directly to Bob Reinhardt ("Reinhardt"), but Defendant Frank Ayala ("Ayala") was Hamilton's "second-level supervisor." When Reinhardt was not present at Matrix, Defendant Robert Dodson ("Dodson") acted as her supervisor.

In July of 2003, Hamilton became involved in a problem with Matrix's payroll. Specifically, Hamilton retrieved various employee checks that had been delivered to the post office and distributed them. On July 10, 2003, Hamilton was called to Ayala's office to explain her actions. At this meeting, Hamilton alleges that Ayala informed her that her actions were a federal offense and that he could have her arrested. Hamilton further alleges that Ayala yelled at her, told her she could not leave, and grabbed her at the back of her neck as she tried to leave his office.

After this encounter with Ayala, Hamilton never returned to work at Matrix. She did, however, attend a meeting at Matrix with Ayala and another Matrix employee on July 17, 2003. Thereafter, Hamilton saw two EAP counselors and began receiving disability insurance benefits. Hamilton's employment with Matrix was officially terminated effective August 14, 2004 because

she had been on a leave of absence for over a year and was not able to return to work.

### 2. Plaintiff Hamilton's Allegations and Complaints of Sexual Harassment

Hamilton alleges that Dodson began sexually harassing her shortly after her employment with Matrix began. Hamilton alleges that Dodson's harassment consisted of inappropriate touching, including placing his hand up the front of her shirt; numerous comments that were sexual in nature, including propositions for sex; and an incident of anal rape. Hamilton claims that the last incident of harassment by Dodson occurred in February of 2004, while she was on a leave of absence from Matrix. At this time, Hamilton alleges that Dodson approached her in a Walgreen's store and whispered in her ear words to the effect that "he missed seeing [her] ass at work, and he couldn't wait until [she] got back."

Hamilton alleges that Ayala began sexually harassing her after she complained to him of harassment by Dodson. Hamilton alleges that Ayala's harassment consisted of inappropriate touching by rubbing her shoulders on multiple occasions. Hamilton further alleges that Ayala was complicit in the alleged rape by Dodson by, among other things, having her work an unusually long shift that left her too exhausted to resist Dodson.

In addition to Ayala, Hamilton alleges that she reported incidents of harassment by Dodson to Matrix managers James Smith and Rodney Williams and to Matrix supervisor Gail Birmingham, but that no action was taken. Hamilton also alleges that she reported Ayala's unwanted physical conduct to Reinhardt, but is uncertain whether Reinhardt followed up on her complaints. In any event, Hamilton alleges that Ayala continued to rub her shoulders after she discussed this conduct with Reinhardt.

Early in her employment with Matrix, Hamilton also reported sexual harassment by a co-employee named Lorenzo that was unrelated to the alleged harassment by Dodson and Ayala. Specifically, Hamilton filed a written report with her supervisor wherein she alleged that Lorenzo had made inappropriate sexual comments to her and had drawn lewd pictures of her on a wall. As a result of Hamilton's complaint and a corresponding investigation, Lorenzo was transferred to another shift, but continued his employment with Matrix.

On April 27, 2004, Hamilton filed a charge of harassment with the EEOC based on the alleged harassment by Dodson and Ayala.

**C. Facts Relating to Plaintiff Hall's Claims Against Defendants**

**1. Plaintiff Hall's Employment History**

Hall began working for Matrix in 1996. In July of 2002, Hall resigned from his then position of supervisor for Matrix. In April of 2003, however, Hall returned to a supervisor position at Matrix under the direction of Todd Millard ("Millard").

Sometime in July of 2004, Dave Ferron ("Ferron"), another employee of Matrix, filed a complaint wherein he alleged that Hall had made an inappropriate sexual gesture and comment to him. Specifically, Ferron claimed that Hall had placed a large, yellow, plastic cone over his groin area and pointed it at Ferrons's face while saying something to the effect of "[d]o you want some of this?" Donna Price ("Price"), a human resources specialist for Matrix, investigated Ferron's allegations. During Price's investigation, Hall denied that the incident with Ferron had ever occurred. Another Matrix employee, however, signed a written statement that he witnessed Hall placing the cone over his groin area and directing it towards Ferron's face though he did not hear any comments by Hall to Ferron due to noise in the work area.

On August 19, 2004, Ferron withdrew his complaint against Hall, but did not retract his description of the incident in question. Instead, Ferron indicated that although he felt that Hall had mistreated him, he wished to "forgive and forget" so that they could continue working together. Despite Ferron's withdrawal of his formal complaint against Hall, the investigation of his allegations continued. Ultimately, Price and Millard concluded that the incident in question had occurred as alleged by Ferron and that Hall's statements to the contrary were therefore false. Millard then made the recommendation that Hall's employment be terminated to three members of Matrix's upper management, and Hall's employment with Matrix was terminated effective August 26, 2004. At the time of Hall's termination, a mediation had been scheduled for the third week in September on Hamilton's EEOC charge.

According to Price and Millard, there was no discussion of Hamilton's EEOC charge during the investigation of Ferron's allegations against Hall. Additionally, Price admits that she was aware of Hamilton's EEOC charge at the time of the investigation but states that she was unaware that Hall was married to Hamilton, while Millard admits that he was aware that Hall was married to Hamilton but states that he was unaware of Hamilton's EEOC charge.

**2. Plaintiff Hall's Involvement with Hamilton's EEOC Charge**

After completing the paperwork for her EEOC charge, Hamilton attempted suicide. Hamilton's treating psychologist concluded it was unsafe for her to be alone following this attempt, and Hall was granted leave from Matrix to attend to her. At this time, Hamilton was required to check in weekly with Nina McConnell ("McConnell"), a human resources supervisor for Matrix, by telephone as a condition of her leave of absence. On several occasions, Hall placed these telephone calls on Hamilton's behalf. Hall generally alleges in a sworn affidavit that during

one or more of these telephone calls, he discussed Hamilton's EEOC charge with McConnell. This statement conflicts with Hall's deposition testimony that he had only discussed Hamilton's EEOC charge with a different Matrix employee who was a friend of his. Additionally, McConnell denies that she ever discussed Hamilton's EEOC charge with Hall.

Hall also claims in his affidavit that he assisted Hamilton in connection with her EEOC charge by faxing papers to the EEOC for her and by communicating by telephone with the EEOC office. Again, these statements somewhat conflict with Hall's deposition testimony that he was not involved in his wife's communications with the EEOC regarding her sexual harassment charge.

### III. Standard of Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported

summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

#### A. Plaintiff Hamilton's Claims

Defendants first argue that all of Hamilton's claims are barred as a result of her failure to disclose them in a Chapter 7 bankruptcy proceeding that she and Hall commenced in February of 2004. Hamilton was granted a discharge from bankruptcy on June 23, 2004, a few months after she filed her sexual harassment charge with the EEOC in April of 2004. At no time prior to the order of discharge did Hamilton provide notice of her claims against Defendants in the bankruptcy proceeding. After Defendants' filed their motion for summary judgment, however, Hamilton moved to re-open her bankruptcy case. In the motion, Hamilton's bankruptcy attorney asserts

8

that Hamilton was unaware that she had viable claims against Defendants until she received a right-to-sue letter from the EEOC in April of 2005.

Hamilton's bankruptcy case was re-opened by Order dated September 26, 2006. The bankruptcy trustee has since filed an objection to Hamilton's claim that her cause of action against Defendants is exempt and provided notice to Hamilton's creditors of a potential distribution of assets. In light of these events, Defendants' argument that Hamilton should be judicially estopped from asserting her claims in this case as a result of her failure to disclose them in her bankruptcy case must fail. Specifically, it can no longer be argued that Hamilton obtained an unfair advantage by failing to disclose these claims in the bankruptcy proceeding. *See Johnson v. Lindon City Corp.,* 405 F.3d 1065, 1069 (10th Cir. 2005) (one element of the doctrine of judicial estoppel is whether the party against whom it is applied will derive an unfair advantage otherwise).

More problematic, however, is Defendants' assertion that Hamilton's claims are in fact the property of the bankruptcy estate and that she is therefore not the real party in interest with respect to these claims. Under the United States Bankruptcy Code, "all legal or equitable interest of the debtor in property as of the commencement of the [bankruptcy] case," becomes the property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). The Tenth Circuit has recognized that causes of action belonging to the debtor fall within this category of assets. *Sender v. Buchanan (In re Hedged-Investments Assoc., Inc.,* 84 F.3d 1281, 1285 (10th Cir. 1996).

Here, the last act of sexual harassment that Plaintiff alleges she was subjected to occurred in February of 2004, which is the same month that Hamilton filed her bankruptcy petition. Moreover, the vast majority of incidents of harassment that Hamilton has alleged in this case occurred well before this date. Under these circumstances, it is readily apparent that Hamilton's

9

claims against Defendants existed at the time of her bankruptcy filing and therefore became the property of the bankruptcy estate. Although Hamilton has asserted that these claims are exempt assets, the bankruptcy court has yet to rule on this issue. Accordingly, as the matter presently stands, Hamilton is not the real party in interest to pursue her claims against Defendants as required by Fed. R. Civ. P. 17(a).

The fact that Hamilton is not the real party in interest on her claims does not, however, mandate the dismissal of Hamilton's claims as requested by Defendants. Rather, Rule 17(a) provides that "no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest ...." I am also mindful that the dismissal of Hamilton's claims on this basis could unfairly impact her creditors. *See Wieburg V. GTE Southwest Inc.,* 272 F.3d 302, 308 (5th Cir. 2001) (impact on bankrupt plaintiff's creditors is a consideration to be taken into account before dismissing action on the basis that it was the property of the bankruptcy estate). As a result, I conclude that the appropriate action at this time is to stay Hamilton's claims and to hold Defendants' motion for summary judgment on these claims in abeyance until such time as the bankruptcy court rules on Hamilton's claim of exemption and the trustee makes any resulting determination of whether he intends to pursue Hamilton's claims against Defendants.

**B. Plaintiff Hall's Claims**

Although Hall jointly filed for Chapter 7 bankruptcy protection with Hamilton, the same real party in interest analysis is not applicable to his claims against Defendants since these claims did not arise until after he was granted a discharge from bankruptcy in June of 2004.

Accordingly, I will proceed with an analysis of the merits of Hall's claims.

### 1. Plaintiff Hall's Claim for Retaliation

In order to establish a prima facie case of retaliation under Title VII, Hall must show: (1) that he engaged in protected activity; (2) that he subsequently suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse action. *Annett v. Univ. of Kansas,* 371 F.3d 1233, 1237 (10th Cir. 2004). In support of their motion for summary judgment on this claim, Defendants argue that Hall is unable to establish either the first or third elements of this prima facie case.

With respect to the first element, Title VII protects employees who have "opposed any ... unlawful employment practice" or "made a charge, testified, assisted, *or participated in any manner* in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). Hall argues that he satisfies the protected activity element of a Title VII retaliation claim based on his actions in, among other things, taking leave from Matrix to generally assist Hamilton due to stresses associated with the filing of the EEOC charge; discussing this charge with McConnell; and delivering documents to and having phone calls with the EEOC in relation to this charge. To the extent that these allegations are inconsistent with Hall's previous deposition testimony, this is a credibility determination that cannot be made in the context of Defendants' motion. Accordingly, I conclude that Hall's allegations are sufficient to satisfy the first element of a prima facie case of retaliation.

The third element of a prima facie case of retaliation requires knowledge by the employer of the employee's protected activity. *Petersen v. Utah Dept. of Corrections,* 301 F.3d 1182, 1188 (10th Cir. 2002). In the absence of such knowledge, it cannot be said that the employer

took adverse action against the employee because of the employee's protected activity as required by 42 U.S.C. § 2000e-3(a). *Id.* Here, Hall has presented no concrete evidence that anyone at Matrix knew of his minimal involvement with Hamilton's EEOC charge. In particular, Millard, the primary decisionmaker in Hall's termination, stated in an affidavit that he was not even aware that Hamilton had filed an EEOC charge, let alone that Hall may have been assisting her with the same. Further, Hall's general statement that he discussed Hamilton's EEOC charge with McConnell, even accepted as true, fails to establish that McConnell had any knowledge that Hall was assisting Hamilton with the same or that McConnell had any involvement in the decision to terminate his employment. Under these circumstances, Hall cannot establish a causal connection between his alleged assistance to Hamilton and his termination. By the same token, Hall cannot establish that Matrix's proffered reason for his termination, *ie.* the sexual harassment of another employee and false statements made in connection with this incident, was pretextual. Defendants are therefore entitled to judgment as a matter of law on Hall's claim for retaliation.

**2. Plaintiff Hall's Claim for Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress, Hall must allege (1) that Defendants engaged in extreme and outrageous conduct; (2) that Defendants engaged in such conduct recklessly or with the intent of causing him severe emotional distress; and (3) that he in fact suffered severe emotional distress as a result of Defendants' conduct. *Culpepper, supra,* 877 P.2d at 882.

Defendants first argue that Hall's claim for intentional infliction of emotional distress must fail because he is unable to establish that Defendants engaged in extreme and outrageous conduct. I agree.

12

"Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of the court to determine whether reasonable persons could differ on this issue." *Culpepper*, *supra*, 877 P.2d at 883. "Outrageous conduct" is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious , and utterly intolerable in a civilized society." *Culpepper, supra,* 877 P.2d at 882. In cases involving wrongful termination, the plaintiff must allege that the manner of his discharge was sufficiently outrageous to rise to the level of outrageous conduct. *Bigby v. Big 3 Supply Co.,* 937 P.2d 794, 800 (Colo. App. 1996).

Here, Hall argues that Defendants' conduct in terminating his employment based on false allegations that he had sexually harassed a male co-worker when the real reason for his termination was retaliation for his assistance in his wife's pursuit of a sexual harassment claim against Defendants was extreme and outrageous. Taken strictly at face value, Hall's argument may have some merit. Considering, however, that Matrix had written statements from both the victim of Hall's alleged harassing activity and an eyewitness that the incident in question occurred and that Hall is unable to present any credible evidence that Matrix somehow solicited false statements from these employees or otherwise had reason to know that they were false, I conclude that Hall is unable to establish that Matrix engaged in extreme and outrageous conduct in terminating his employment. *See Bellairs v. Coors Brewing Co.,* 907 F. Supp. 1448, 1459 (D. Colo. 1995) (discharge for allegedly false allegations of sexual harassment was not outrageous, in part, because eyewitnesses corroborated allegations). Defendants are therefore entitled to judgment on Hall's claim for intentional infliction of emotional distress as a matter of law.

IT IS THEREFORE ORDERED as follows:

1. Defendants' Motion for Summary Judgment [Doc # 65] is GRANTED insofar as it relates to the claims of Plaintiff Larry Hall;

2. Plaintiff Larry Hall's Third Claim for Relief (Retaliation) and Twelfth Claim for Relief (intentional Infliction of Emotional Distress) are hereby DISMISSED WITH PREJUDICE; and

3. Defendants' Motion for Summary Judgment will be HELD IN ABEYANCE insofar as it relates to the claims of Plaintiff Michele Hamilton and the case shall be STAYED with respect to these claims until such time as the bankruptcy court rules on Hamilton's claim of exemption and the trustee makes any resulting determination of whether he intends to pursue Hamilton's claims against Defendants;

4. Plaintiff Michele Hamilton shall file status reports advising the Court of all relevant developments in her bankruptcy case; and

5. Copies of this Order shall be served on Daniel K. Usiak, Jr., 13 S. Tejon St., Ste. 500, Colorado Springs, CO 90903; and Kenneth J. Buechler, Sender & Wasserman, P.C., 1999 Broadway, Ste. 2305, Denver, CO 80202.

Dated: January __12__, 2007 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, CHIEF JUDGE